1-4-1537 Norbert J. Kelsey v. Daniel T. Bailey, Chief Judge of the Little River Band of Ottawa Indians Tribal Court. Arguments not to exceed 15 minutes per side. Mr. Kanji for the appellant. Before you begin, I want to express the gratitude of the Court of Appeals for having with us Chief Judge Ed Sargas, Chief District Judge, who is here to help us with our docket and has consistently done so, so we appreciate that. Thank you. Please go ahead. Thank you, Your Honor, and may it please the Court. The first question presented in this case is whether the Little River Band may exercise concurrent criminal jurisdiction over an offense committed by one of its members but taking place outside of its Indian country. The parties agree on the governing analytical framework. The tribe may exercise this membership-based jurisdiction so long as it forms a component of its inherent sovereign authority and has not been implicitly divested by virtue of its dependent status or expressly divested by act of Congress. The District Court rested its holding on a finding of divestiture. Before this Court, Mr. Kelsey argues largely based on inherent sovereignty, and it is there that I will begin. I think the starting point is clear. Tribes remain separate sovereigns preexisting the Constitution, as the Supreme Court recently reaffirmed in its Bay Mills decision, and as such exercise the inherent powers of sovereignty. That sovereignty possesses both a membership-based and a territorial component. Courts have held in a variety of contexts that tribes may exercise authority over their members independent of territorial bounds, and that membership-based jurisdiction extends fully to the criminal sphere. In Wheeler, the Supreme Court had occasion to conduct a searching examination into the nature of tribal criminal authority over its own members, found that that is an inherent aspect of the tribe's sovereignty, and one which the tribes exercised long before the coming of the Europeans. In other words, fully independent of the Indian country boundaries that came with the Europeans. Indeed, as the Solicitor of the Interior elaborated upon in the 1939 opinion that has received so much attention in the briefing, and as the United States confirms in its own submission to this Court, tribes exercise, it's a matter of historical record, the tribes exercised criminal authority over their members, both inside and outside of territorial bounds, before and after the advent of Indian country. The solicitor termed this part of the tribe's original sovereignty. In his briefing, Mr. Kelsey chastised us for not having purportedly used one example in the historical record of the exercise of such jurisdiction, in addition to the depredation acts and treaties that the solicitor and the United States have canvassed, in which the United States encouraged the tribes to control their members who were engaging in off-reservation depredations, with punishment and deterrence being the most natural mechanisms for such control. We used three additional examples in our reply brief, which we chose because not only are they historically very noteworthy, but in two of those examples, the United States endorsed, and I think in the Cherokee case, it would be fair to say, virtually required tribes to exercise... One of those was a pardon? Yes. One of them was a Solicitor General of the Interior recognizing the possibility, but has there ever been an actual, or do you have precedent where there's an actual prosecution? Well, you're exactly right, Your Honor. The Cherokee case was a pardon, but that was the assertion and exercise of criminal jurisdiction the Cherokee issued their... That's not answering my question. It's one thing to say, we're pardoning something. It's another to say that there's a recognition of the propriety of an exercise of jurisdiction. Like in international law, precedent would be a person gets tried and the other side doesn't object. Not the other side, the state of nationality doesn't object. That would be a classic international precedent between sovereigns. Right. But there's no such example that you've come up with. Well... Is that correct? In the three examples that we cite in the reply brief, in two of them, it's not clear what happened subsequent to it. So I don't know what happened, honestly, in the McKinney case. You can't say that something happened if you don't know what happened. Well... There's no examples. Or are there examples? Sure. Or you could say Indian so-and-so was prosecuted and there was no sovereign-to-sovereign objection. Absolutely. This tribe itself, Your Honor, has exercised... Not this tribe. Any. Do you have examples? This tribe itself has exercised this form of jurisdiction without objection over the course of years. Cited these cases? They're not in the record, Your Honor. They weren't in the tribal court record. Have you cited any to us? No. So there's no... We have not cited... I mean, you may be right. I think you have a lot of strong arguments. But to say that there's precedent that supports it is sort of, it's just never happened, right? It never happened that we know of. You're saying that your tribe has, in fact, prosecuted other Indians for crimes occurring off the reservation and not within Indian country. That's exactly right. They're just not in the record. That's right. That's right. They are a matter of record. Would it make sense to put that in the record, if that's your argument? Well... At least to rely on it as a, not necessarily in the record, but as precedent. Well, Mr... Just like other cases can be precedent, you know. We've actually thought it was more important, Your Honor, to put in examples where the United States or others had recognized this authority. Because Mr. Kelsey's argument was this never formed a part of the tribe's inherent sovereignty. People did not understand this. And when we have... You say it's better to do something else. I'm trying to get at whether you did this. No, we... It's just not cited. No, I want to be absolutely clear. No, we did not cite that. Are those... I don't know how recorded tribal court decisions are. Are they something that are searchable and reachable by us if we wanted to look for them or not? There are certainly dockets, docket entries, that sort of thing. I don't think they are searchable electronically, though I would have to check. But they are certainly something we could lodge with the court. Is there a publisher that's sort of a compendium of Indian cases or something like that? Not for this tribe, Your Honor. All right. Any tribe would be good enough. Or would be probative. We've got lots of other tribes in Michigan. Do you know for a fact whether any of them are prosecuting Indians for crimes committed off the reservation? Well, they take a variety of approaches, Your Honor. In the appendix, our appendix C to our opening brief, we cite the codes of various tribes, including some in Michigan, some of whom assert extraterritorial authority, some of whom do not. The Sault Ste. Marie tribe in the Upper Peninsula is one that... Asserting it and doing it are arguably two different things. Understood. You do this stuff for a living, right? That's right. So do you know of other tribes that prosecute Indians for crimes off the reservation? Leaving aside the Little River Band, I can't cite a specific current example of a tribe having done so. In an old example, it doesn't have to be from Michigan. You know, if the Apaches did it in 1872, and you could say Apache Joe was prosecuted off the reservation, that would be an indication, that would be the type of precedent, the inter-sovereign precedent. But that just isn't, there's just no record of that. We have not cited those, no, Your Honor. I want to make... You may be right, but that cuts against it. You keep being asked one question, and then you give an answer to a different question. He didn't ask you whether you cited it. He asked, are there those cases? We know you didn't cite it. We've read the stuff. So either the answer to the question of, do those cases exist, are either yes, no, or I don't know. Those are your choices. The answer, and I want to be clear, I'm sorry, I'm not trying to evade the answer. We don't know of historically citable examples. And if, so what we... That's all I'm asking. That's the answer. That would greatly strengthen your case if you had them. If we had assertions of jurisdiction, we don't know of citable assertions. We know what's in the brief, which is that such jurisdiction was understood and condoned and endorsed at the highest levels of the United States government. What we also know, Your Honors, in terms of the inherent authority aspect of this, is that the court in Wheeler equated the tribal sovereignty here to being akin to that of other sovereigns. And Your Honor mentioned the international sovereignty context where it is understood that sovereigns can assert extraterritorial jurisdiction. If this were an international case, you'd have a list of hundreds of examples. And they wouldn't all be on electronic. They'd be in diplomatic discourse and all that kind of stuff. It would be much stronger. I understand. But you can still make the argument. You just don't have that... And to be clear and to be fair, in the tribal context, we're dealing with a situation where there's an awful lot of oral history, which we can't cite or point to in records, and where we don't have... You could have an affidavit from a tribal judge, from a tribal chieftain, from one of the elders that said this is what we've done for the last 50 years. I'm sorry. I was referring back to going back to the 19th century and the period of time where there's the debate over whether tribes exercise this authority independently. May I ask another question, Your Honor, whether there are any cases which we've pretty well clearly determined there are not, at least citable cases? I'm intrigued, I guess the best way to put it, with how the jurisdictional question here and the due process question here do or don't fit together. One way that I can ask the question is let's assume... What is your position as to whether we have to reach the jurisdictional question in order to reach the due process question? Are they related? I think the jurisdictional question, Your Honor, is the predicate question here because the due process question assertion relies on the Indian Civil Rights Act. That's Mr. Kelsey's hook for bringing the due process claim before this court. And under Mr. Kelsey's view of the world, that act does not apply outside of Indian country. That act pertains to tribes exercising the powers of self-government, and Mr. Kelsey's view is Congress would have understood that to be limited to Indian country bounds. You've got to have jurisdiction in order to provide the basis of the due process claim. Exactly. So if we found for due process what we said about jurisdiction wouldn't be dicta because we couldn't reach one without the other. That's exactly right. Just so I can finish up on that. This is an unusual situation, it seems to me, in that this is raised before the district court. The district court only reaches jurisdiction. The district court doesn't address the portion of the magistrate's R&R that deals with the due process claim. What is your position as to if we find there is jurisdiction, should we also be reaching, and so we reverse that part of it, should we also be reaching the due process claim or is there some reason that you know of why that ought to go back to the district judge? We didn't find a lot of authority, Your Honor, on that issue. I'm just asking, what's your position? I think it's a legal determination, so I think this court could reach it. In other words, I don't think the district court needs to make findings a fact or anything of that sort going to the due process issue. So the court could reach the issue. I realize we could. Are you asking us to or to send it back if we reverse on jurisdiction? I think our preference would be to have the issue resolved by this court. Resolved here. Okay. That's all I wanted. I have one question that's related to that. Assume that, let's see if I can phrase it properly. Assume that there is a due process problem which warrants, because of the language in the statutory provision, which warrants habeas relief, right? And assume that that's what we conclude. I'm not saying that we would, but there's an argument. It coheres. It doesn't fail, right? It doesn't fall of its own weight. I mean, it has some weight to it. Why then would we have to decide whether the jurisdiction could be exercised if it hadn't been properly exercised? Would we have to go and decide that or not? I do. I think that's the predicate issue, Your Honor, because, again, the Why? I mean, it's not necessary to our decision. We could just grant habeas on the theory that You're saying you don't have due process rights other than through IGRA, which requires a resolution of the jurisdictional question. Exactly, Your Honor. Mr. Kelsey's view of IGRA is that it does not apply to crimes committed outside of Indian country. But that's also his hook for his due process argument. So if he's correct on the jurisdictional issue, there is no basis for raising a due process claim. The predicate has to be I'm saying what if we were to conclude that there is a basis to the due process claim, that you can't try someone when the statutory provisions for which you're trying them don't extend to your action. If we come to that conclusion, I'm not seeing how then we have to decide the other issue. Well, keep in mind, Your Honor, that the due process clause, the constitutional clause, does not apply of its own force to the tribes, to the Little River Band. The due process protection, the fair warning principle, only applies as incorporated through the Indian Civil Rights Act. And that is the basis for Mr. Kelsey's due process claim. It is the Indian Civil Rights Act. And Mr. Kelsey's position in front of this court is that the Indian Civil Rights Act only applies to crimes committed within Indian country, that Congress understands that the tribe's criminal jurisdiction is confined to Indian country, and that when Congress passed acts, including the Indian Civil Rights Act, that they, by their own force... In order for him even to make that due process argument, that you have to have actually resolved the other issue. Exactly. And the second factor I mentioned here is just a prudential one, which is this issue of the scope of the tribe's inherent criminal jurisdiction and whether it has been divested is one that is clearly of great significance, not only to the Little River Band, which has a good number of these prosecutions that are awaiting the court's resolution here, or I should say several, but also clearly to other tribes around the country and to the United States, both of which have submitted amicus submissions to this court. So there's, I think, also a prudential reason for resolving that. But I think the most important thing is that legally... If the due process issue precluded... I'm still hung up on this. If the due process issue precluded Mr. Kelsey's conviction, which is their argument, why would it matter what IGRA says? Because the due process right only exists here because of the Indian Civil Rights Act. There is no... The Constitutional Due Process Clause does not apply to the tribes because of Talton v. Mays. Congress applied the due process protections and other constitutional protections to the tribes via the Indian Civil Rights Act. Our argument is that Congress, that Indian Civil Rights... If it didn't extend to them, he would get habeas. And if it did extend to them, and we assume this jurisdictional issue has weight, this due process issue has weight, he gets habeas, so it doesn't really matter then. You can say it's a threshold issue, but it's a threshold issue that could be decided either way and he'd get the same relief. Your first clause, Your Honor, I'm not following. If it didn't extend to them, then he would get habeas. I'm not sure I understand why that would be. There's no jurisdiction. You say it's not within the... You're just saying it's not going to turn out the same either way because there is no such thing, correctly or incorrectly, as a freestanding constitutional claim involving Indians. That's exactly right. There's no freestanding claim. It has to be anchored in the statute. And it's only anchored in the statute if we're right on the inherent jurisdiction argument. Mr. Kelsey's right on the inherent jurisdiction argument, then the statute doesn't apply. It just has no force here because this crime was committed outside of Indian country. If we're correct in the inherent jurisdiction argument, then there is a basis for deciding whether Mr. Kelsey's due process claim is correct or not. Okay. I'll think about it. Thank you. All right. Thank you. May it please the Court. I'm Alistair Newbern from Vanderbilt Law School on behalf of Appleen Norbert Kelsey. It is absolutely not Mr. Kelsey's contention that ICRA does not apply here. The Indian Civil Rights Act and its grant of due process is tied to the prosecution in tribal court, which is well within, obviously is the source of tribal jurisdiction here. So we don't get this confused. Yes. If it turns out to be no jurisdiction, we don't get to this, right? Maybe for a different reason, but the statute won't apply if the tribal court had no jurisdiction in the first instance. If the tribal court had no jurisdiction in the first instance, ICRA would still apply because ICRA, the Indian Civil Rights Act, applies the due process protections of the Fifth Amendment to the tribal court proceedings. So I believe that you need the Indian Civil Rights Act to get to behaviorist protections here in this court, and it would apply no matter what. More to this court's jurisdiction, then, is what you're arguing. Yes, Your Honor. So the first argument in your brief has to do with this buoy due process issue, right? Yes, Your Honor. Okay. Assume you win on that. It's a big assumption. Assume you win on that. Yes. Then we then have to go to the other issue? No. Why not? Because they say clearly you do. Well, because if there was a due process violation here on fair notice grounds, then that infects the entire proceeding. And it doesn't matter, even if this court found that the tribal court had the jurisdiction that the band assumes here, it wouldn't matter because it would have applied that jurisdiction outside the bounds of due process and outside of fair notice. So you're saying if we decide the first issue in your favor and then we go on to the second issue, we could decide that Indian tribes in general have this power and you would still grant habeas. Or you could decide Indian tribes don't have this power and we would still have to grant habeas, so therefore the second issue doesn't need to be decided. Is that right? Yes, Your Honor. If a due process violation is found,  because that due process violation would violate it. Can we do this first issue without at some point of our analysis going through whether the Indian tribes can prosecute members outside of their jurisdiction? Yes, Your Honor, I believe you can because again here it's the judicial action of striking down the narrow and precise criminal jurisdiction statute that was an unforeseeable and inexplicable judicial act which violates due process under Bowie and Rogers. That act is not tied to whether the tribe has jurisdiction or not. But that's just not the way we normally would look at things, so let me try this out and I'm interested in your reaction to that. Generally speaking, we look to our, here when we're dealing with a normal case obviously, we look to whether there's jurisdiction first. If there isn't jurisdiction, the case is over. It just seems sort of incongruous to me, but I don't know that I'm right about this, to say that we determine whether something that a tribal court did in connection with this individual defendant was right or wrong if it turned out that the tribal court didn't have jurisdiction over him to begin with. So why would we second guess the decision of another sovereign, I'll bet a dependent sovereign, if in fact the whole procedure shouldn't have been undertaken because the tribal court didn't have jurisdiction? You're absolutely right, Judge McKeague, that jurisdiction is normally the threshold issue and can be the threshold issue here also. The due process violation goes to the question of the tribal court's jurisdiction here, but it's key to the tribal court's assertion of its own jurisdiction through the law and order code and through its tribal constitution and its acts in striking that down. So even if the court assumed, for the purposes of deciding the due process violation, that the tribal court did have jurisdiction over Mr. Kelsey to prosecute this crime, the due process violation would still taint any conviction that occurred. I'm just trying to figure out that if we went straight to due process, and I'm not saying that we would do that, would anything that we said about at least the territorial aspect of jurisdiction be dicta or wouldn't it? Do we need to get to that or don't we? No, I don't believe you need to get to that. You could assume for the purposes of argument that jurisdiction existed and reach the due process. But we have to either find it exists or the way you're just suggesting, we have to assume that it exists. Is that right? Yes, Your Honor, I believe that. So then we have to get to jurisdiction first or we have to assume it. Well, yes, you either have to decide it or you have to assume it, but you can assume it because a determination of whether the extraterritorial jurisdiction exists in the full of this argument is not necessary to decide the due process issue. It's not necessary to our habeas jurisdiction either. Correct, Your Honor. If I could shift you to the due process fair notice issue. Yes. So tell me if you agree or disagree, but your best argument is that the decision of the tribal appellate body essentially subjected your client to dual prosecution. Whereas before this interpretation, he could only have been subject to prosecution by the state of Michigan, right? Yes. And there's no issue, the state of Michigan criminalized this conduct. So the claim isn't that conduct that was legal at the time is now illegal after this decision. That's not the issue. The issue is being subjected to additional penalties in a retroactive way. Yes, Your Honor. Although we do not concede that these acts would have been criminal under Michigan's sexual assault statute. In fact, Michigan has a very specific sexual assault statute that requires use of force, which did not happen here. But there's a physical touching here. Something could be assault, menacing. I don't think there's really a serious claim here that Michigan law would have been so different that this was out of the blue as far as conduct. Now, as far as the penalties, but would you agree with me, then we get to the question of whether the phrase that's used is whether this was an unexpected and indispensable interpretation of a controlling statute. That's the language the Supreme Court has used. Yes, Your Honor. So that's the standard. Yes. We have what the tribal appellate body held was you have essentially a criminal offense ordinance that describes jurisdiction that they found to be in conflict with the tribal constitution. So my question to you is do we look at both of those together when we decide that this is unexpected and indispensable? Or do we simply look at what I would refer to as an ordinance or statute? Wouldn't a reasonable person consider both? Yes, Your Honor. You can consider the constitution and the law and order ordinance together, but it is the more specific jurisdictional statute from the law and order ordinance that provides notice of the tribal court's jurisdiction here. The more specific versus the general, that's when you're comparing two statutes. This is a statute in comparison to a constitution. Yes, Your Honor. But the constitution itself in... Pardon me, Your Honor. The constitution itself in Section 8 of Article 6 necessarily incorporates the law and order ordinances into its interpretation. And furthermore, the constitution, the tribal constitution grants under its strict separation of powers the duty to the tribal council to enact its powers through a jurisdictional statute like this. Even if the tribal law and order ordinance was not on the books, Mr. Kelsey would not have had notice that he could have been prosecuted here because under the terms of the constitution it can only reach as far as tribal sovereignty as interpreted under federal law. And here, tribal sovereignty as interpreted under federal law is extensive with Indian country. There's no question that it includes fee lands. I'm sorry, Your Honor. Surprisingly, there's not a lot of case law on that question. Is there? Well, on the question of whether lands held in fee like the tribal community center here, the Plains Commerce Bank case is clear that lands held in fee do not retain their reservation status. And the tribal constitution has to be limited by the federal sovereignty, which would not have given notice to Mr. Kelsey in this case. Let me go back to what you just said a minute ago because if you made the statements about the constitution and there has to be an enabling, in this case, ordinance, if you had been talking about the United States Constitution, I would think that you're indisputably correct. But I don't read the Indian constitution to say that it has to be implemented by an ordinance. So where do I find that in there? Well, Your Honor, in Article 6, Section 8, where the constitution sets out the powers of the tribal court, it says the judicial powers of the Little River Band shall extend to all cases and matters in law and equity arising under the constitution, the laws and ordinances of or applicable to the Little River Band, including but not limited to, and then it sets out civil and criminal matters. So I believe that incorporates the law and order ordinances into the constitutional power. And then the constitution delegates to the tribal council the authority to make laws. And the tribal ordinance here, the jurisdictional ordinance, says that it is enacted for the specific purpose of giving fair notice to people, to Indians, in terms of where they may be prosecuted. I don't think there's any doubt about giving fair notice as to what they could be prosecuted about. I get that. But the tribal constitution defines what the territorial restrictions or limitations, if any, are in connection with what the tribe claims under their constitution, right? Correct. It doesn't say the territory of the Little River Band of Ottawa Indians is what an ordinance says it is. It's established in the constitution as broadly as could possibly be drafted. And then it goes on to say the jurisdiction is to be exercised to the fullest extent consistent with the constitution, the sovereign powers of the tribe, and the federal law. It doesn't refer to ordinances there. But the ordinance itself says that its purpose is to give fair notice of where the power of the tribe will apply. I get that. So we'll get to that in just a second. I think there's only one more sequential question. You're taking the position that the more specific governs over the more general, and I think you're generally right about that. But something that's more specific in an ordinance is never going to control when the ordinance is, as the tribal judge here found, contrary to the constitution. You can't amend the constitution by an ordinance. So why are we focused in on simply whether it is more specific without addressing what it really is? First, Your Honor, I believe that's different for purposes of notice, for giving fair notice. Yes, the more specific would not control over a constitutional provision if you were implementing it substantively. But here we're just looking at what Mr. Kelsey had fair notice of the territorial jurisdiction of the tribe would be. And so he had this more specific ordinance upon which to rely. And that wasn't unreasonable. This more specific ordinance is what the tribal court had relied upon in the Champaign decision, where it had applied it strictly and upheld it. And, again, this ordinance itself is keyed to and reflects the general understanding of tribal sovereignty under federal law. So even if you just look to the constitutional provision. Well, that's what you say it is. They say it's the opposite. Well, I think for territorial jurisdiction, Your Honor, there's no question. And territorial jurisdiction is what the tribal court convicted Mr. Kelsey under. It did not convict him under an assertion of membership-based jurisdiction. It found that the tribal community center and lands held in fee should be under the territorial jurisdiction of the tribe. And so for notice purposes there, even if this statute wasn't on the books, the current state of tribal sovereignty under federal law, as acknowledged by the band and as acknowledged by the United States in their brief, was that these lands held in fee would not fall under the tribe's territorial jurisdiction. Where do we find the basis for your assertion that they actually prosecuted him under territorial jurisdiction versus membership jurisdiction or some other jurisdiction? It seems to me that isn't language that would normally be in some sort of charging document, so where do we look for that? Well, in the tribal court's opinion, Your Honor, the tribal court rested its holding on a finding that territorial jurisdiction or the tribe's jurisdiction ought to apply to lands owned by the tribe like the community center. The tribal court did reference Mr. Kelsey's jurisdiction as a member. It had to because the tribal court only has jurisdiction over member Indians and non-member Indians under the Daroe Fix legislation. So you're reading into it, basically. I believe that's the reasonable reading of the tribal court's opinion, Your Honor. To turn briefly to the membership-based jurisdiction argument, to be clear, Mr. Kelsey's argument is that extraterritorial criminal jurisdiction that's membership-based was divested from the tribes as a consequence of domestic-dependent sovereignty. That is the basis of our argument, and it is based on the fact that domestic-dependent sovereignty is necessarily territorially limited and has been since its very first articulation in Fletcher v. Peck when the court said that domestic-dependent sovereignty's limitation on full tribal sovereignty was the right to govern every person within a tribe's limits except themselves, and that has only been repeated throughout the court's jurisprudence. Okay. Thank you. Thank you, Your Honor. Could I ask her one more question? Sure. I'm not sure that I'm going to get this phrase exactly correctly, but under the federal court cases, it's clear that tribes enjoy more sovereignty the more the question deals with internal governance matters of the tribe. Is that a fair statement? Yes, Your Honor. Although the wording may not be exactly correct. So if we take what you just said to its logical conclusion, let's assume, hypothetically, not this case, that somebody commits a crime that everybody will agree goes to the internal governance of the tribe. Yes. The tribe has jurisdiction if it occurs within the reservation or Indian country, but if it occurs across the street, they don't have jurisdiction, even though it goes to what is inherently within the tribe's sovereign authority as commonly understood. Is that what you're saying? Not necessarily, Your Honor. First, if it is a crime where the actual locus of the crime, the harm of the crime, is within Indian country such that it appears to be a territorial crime like the crime in the Champaign case. Yeah, you changed my example. Okay. So if it's not a crime where the harm goes to the locus of Indian country, then yes, because boundaries are firm in jurisdictional context. So you're disagreeing then with what the government asserts, the federal government asserts to be the jurisdiction of the tribes, which is more narrow than the tribe asserts but broader than what you're claiming. Yes, Your Honor. The authority that we have found in federal cases, in tribal treaties, and in tribal law authorities all indicate that tribal criminal jurisdiction stops at the edge of the reservation's borders. And, Your Honor, I will say that tribal court decisions are in a database on Westlaw and are searchable, and we looked at as many of them as we could possibly look at, and there were no cases that exercised this kind of territorial jurisdiction. Fair enough. Thank you. Thank you. Is your position different from the federal government's position? No. I think ours is on all fours with the position of the United States. So although maybe the theory of your position might extend to a member who committed an assault in Honolulu, that's not what you're arguing today, is that correct? That's right. You're only arguing the more limited position that basically is the same as the U.S. government's position. Is that correct? That's exactly right. Because I think there's little question, Your Honor, that the facts of this case implicate core tribal sovereign interests. I think Judge McKeague's question to counsel was exactly right and highlights the issues in this case. Even under Mr. Kelsey's position, this crime took place just across the street from the tribe's Indian country in the tribe's governmental center. It's a crime of sexual assault committed by a tribal governmental official against a tribal employee in full view of other tribal members on a crime that's core to the tribe to protect its members against. Mr. Kelsey made a lot of choices, has enjoyed the benefits of tribal membership, and where core sovereign interests are implicated here, I think it is the position of both the United States and the tribe that it does enjoy jurisdiction over the crime. I want to go back. Your Honor asked me a series of questions earlier, and I misplayed my answer a little bit, Your Honor, with respect to examples of jurisdiction. This goes to an issue I wanted to highlight. There is, I think, one case in our briefing which we misbriefed, and I want to apologize to the court, though I think luckily our mistake was one of underselling rather than overselling the case, and that's the Settler v. Lemire case, the Ninth Circuit case from 1974. I think the United States actually has the correct reading of that case. That involved tribal prosecutions of members for engaging in off-reservation criminal violations, violations of the tribe's fishing codes, and there were two parts to the Settler holding. You cite it, but you don't explain that it's an actual prosecution, is that what you're saying now? Oh, we do explain that it's a prosecution. We did not tease out the holding in the way that the United States does, but it's clearly an example of off-reservation prosecution. That's clear in the case. It's a habeas case. What the court said very clearly was the fact that the crime took place off the reservation did not make it any less a matter of internal self-government for the tribe, that the locus of the crime was not relevant, that this involved the tribe governing the conduct of its own members, hence it was a matter of the tribe's internal relations, and the tribe had retained that authority, had not given away that authority in the treaties. The court then went on to say, in what it described as a more narrow holding, and this is where the United States does a nice job of teasing this out, in what it said was a more narrow holding, that the tribe also had the off-reservation power to arrest and seize the members for those violations, to seize their fishing equipment and to arrest them off-reservation. That, of course... Kind of a different issue. That's a different issue, exactly, and that's not a power we're claiming here. And Mr. Kelsey says, well, the court made it clear that that's a very narrow power. That is a narrow power, but it's not the power we're talking about here. In terms of just the assertion of criminal jurisdiction, the authority to prosecute, the Ninth Circuit recognized in that case that the tribe, that was part of the tribe's retained authority. So I think, Your Honor, that answer to your question, that's a clear example of an off-reservation prosecution where a sister circuit has recognized that as part of the tribe's inherent authority. Did the case involve a prosecution or involve some reasoning of the Ninth Circuit that prosecution would be okay? It absolutely involved a prosecution, Your Honor. It was a habeas proceeding where the defendants were seeking relief from the tribal prosecution. Okay, thank you. Ms. Newbern had a pretty forceful response to your argument that the due process claim here exists independent of the question of jurisdiction. Although, frankly, I'm not sure where we sort of ended up at the end of our discussion. But how do you respond to the argument she was making? I think if I understood her argument, Your Honor, it was that there is a freestanding due process claim that Mr. Kelsey can state here independent of the jurisdictional argument. And it is our position, Your Honor, it's clear that there is no freestanding due process claim. The court resolved in Talton v. Mays 140 years ago that the Constitution does not apply of its own force to Indian tribes. The due process protection applied to the band through the aegis of the Indian Civil Rights Act. And that act only applies here and only provides a basis for this habeas proceeding if we are correct that the tribe's inherent jurisdiction, its powers of self-government extend to crimes committed by members no matter where committed, certainly if committed outside of Indian country. Because the act under Mr. Kelsey's view of the world, Congress would never have intended it to apply beyond Indian country boundaries because in Mr. Kelsey's view, Congress does not understand, and nobody else understands, that tribal criminal authority extends beyond borders. Does that answer the question, Your Honor? Good enough, as far as I understand it. Professor Newbern said with great authority that all authorities recognize that tribal powers stop at Indian country borders. That is just absolutely a fundamental misapprehension of basic principles of federal Indian law. We cite in our briefs a number of cases from sister circuits recognizing tribal authority of members beyond borders. I think the Supreme Court's recent decision in the Bay Mills case sounds the death knell for that argument. The argument was made there that tribal sovereign immunity cuts off at Indian country bounds, that tribes cannot assert that sovereign immunity beyond their borders, and the court flatly says... Well, let's tease that out for just a second. It seems to me that whether a tribe is sovereign really shouldn't depend on where somebody chooses to sue it. Why does it logically follow, in your mind, that because sovereignty in this case exists outside the reservation, which seems to me to be indisputably true, that therefore this extraterritorial jurisdiction, the tribe can assert against members. I don't see why one necessarily presages the other. Because, Your Honor, this is a sovereign act. The act of prescribing and controlling the conduct of your own citizens is a sovereign act. It's inherent in sovereignty. And it would only not be a power of this tribe if the presence of those Indian country boundaries somehow magically cut off that power. So the power to control your own members regardless of where they are is just as important to the tribe as not being able to be sued by another sovereign without its consent. Is that essentially it? That's absolutely right. Okay, I got it. I would say, Your Honor, it's essential to tribes like this tribe where, because of the forces of history, the land parcels are so scattered, where what was supposed to be their historical reservations have been so broken up that in order to actually act as sovereigns and to control their members, to control their governmental officials, they need to exercise this type of authority. It's a fundamental authority. I know I'm out of time, but may I address the due process issues, Your Honor, for just a minute? You want 60 seconds? Is that what you want? Sure. I'll do my best. Our first point, of course, is that the fair warning principle applies to conduct. I think Professor Newborn has misstated the tribe's own criminal code, which makes clear that fair warning is meant to provide fair warning as opposed to for conduct. The Second Circuit's decision in the Al-Qasar case clearly states that jurisdictional determinations that do not convert an innocent act into a crime do not implicate fair warning. Even if fair warning is implicated here, what the Tribal Court of Appeals did was to do exactly what the Supreme Court sanctioned in the Metrish case and what this court very recently sanctioned in the O'Neill case, which was to harmonize different provisions of law. In both Metrish and O'Neill, there were courts of appeals decisions and statutory provisions going in different directions. It seems like it's not reconciling provisions that are in tension when you have a general scheme saying our power extends thus far and then you have a specific limitation, or not limitation, a specific outlining of the scope of a criminal code and something is outside that code, even though the nation or the state or the city or whatever says, you know, we have the power to regulate all kinds of things. Now here's what we're regulating, and then they regulate and they say it's within a territory. It just seems like nobody would read that and think this applies to me outside that territory. Well, I think there are two very important aspects to the court of appeals, two responses to that, Your Honor. First is there are two distinct bases for the Tribal Court of Appeals decision. The provision you're talking about is a territorial jurisdiction provision. It's clearly labeled as such. What the Tribal Court of Appeals said before getting to that provision was to say, this court recognizes that tribal jurisdiction is larger than territory because some tribal authority extends beyond its land. For example, tribal membership and self-regulation of tribal treaty rights. And then it explicitly says which extraterritorial crimes are covered, right? No, Your Honor. That aspect of the court of appeals holding, that goes to membership-based jurisdiction and follows immediately after, I should say, the court's recognition that under federal law, the tribe possesses membership-based authority. So that's one. That's not what Judge Rogers is asking. They gave examples.  Read that part of the decision again. Sure. This court recognizes that tribal jurisdiction is larger than territory because some tribal authority extends beyond its land. For example, tribal membership. It's for example. It's not an exclusive list. That's right. We don't know whether this is inside or outside that. It doesn't include it or preclude it. We don't know. Right. Well, they're clearly recognizing membership-based jurisdiction, I think, with the reference. Possibility, sure. Possibility, and then they list certain ones, right? Isn't there a list of eight or something extraterritorial? Oh, then if you're talking about Section 4.03 of the Tribal Code, yes. Number off the top of my head. Yes, Your Honor. Where the code talks about a territorial jurisdiction, then it enumerates certain crimes, extraterritorial crimes that are covered. Very important to keep in mind there, that listing and that entire provision, that doesn't apply just to tribal members. That applies to all defendants. So what the tribe is doing there, and this is, again. Extraterritorial crimes can be tried by non-members? Well, to the extent consistent with federal law. So clearly federal law imposes some very significant limitations on the tribe's ability to assert jurisdiction over non-Indians or non-members. But the tribe, to the extent consistent with federal law, that's very analogous to the protective principle under international law where you can exercise territorial jurisdiction for certain enumerated crimes that have an effect on government. So that list goes beyond what international law would deem to be protective. But I think the point, Your Honor, is that the tribe is enumerating certain extraterritorial crimes, regardless of the identity of the defendant. In 4.02, immediately above it, the tribe asserts personal jurisdiction, jurisdiction over members. It's a distinct crime. The last thing I'll mention is, and as the Tribal Court of Appeals noted, even if one is just looking at statutory provisions, the Tribal Court of Appeals noted Section 8.08 of the Criminal Procedures Ordinance, which clearly defines the tribe as having criminal jurisdiction over any offenses committed by an Indian within the territorial jurisdiction of the tribe, as defined by the Constitution. So that is a clear reference to the constitutional definition of territory, which included... The statute is, in some sense, intended to incorporate the breadth of the constitutional provision. Exactly. And to the extent that the Tribal Court of Appeals said, in terms of defining territorial jurisdiction, the Constitution has primacy, and therefore 8.08 is a better reflection of the constitutional command than 4.03. We're going to give credence to 8.08. That is a totally normal aspect of the judicial function, of course. And I think Your Honor is completely... It's not so outrageous as to violate due process. Exactly. Not unexpected and indefensible. Okay. That makes sense to me. Thank you, Counsel. Thank you very much. Thank you for presenting us this interesting case. Ms. Newberg, we appreciate you and your clinic for your work under the Criminal Justice Act. Thank you. We appreciate what you do. As in many things, Judge McKee keeps me straight.